Number 2, 008-1605, Faus Group v. United States. Mr. Yarko or Jarko? Jarko, Your Honor. A hard J, right? Right. Okay. All right. You have, just want to check, you've reserved six minutes for rebuttal, is that correct? That's correct. Okay. You can begin whenever you're ready. May it please the court. The question presented in this case is the proper tariff classification for Faus Group Inc.'s tongue and groove laminate flooring. The crux of the party's dispute is whether Chapter 44, Note 4 excludes the imported articles from the fiberboard heading 4411 because the articles have been upgraded to the point that they're classifiable under another heading as builder's joinery under heading 4418. The government concedes that Chapter Note 4 excludes some products from heading 4411 by virtue of their inclusion in another heading. The question is the extent of that exclusionary note with Faus maintaining that any operation that gives an article the character of another heading excludes it from 4411 and the government maintaining that only those operations not enumerated in the Chapter Note have that exclusionary effect. We're talking about Chapter Note 4. That's correct, Your Honor. What do you think it, what is the referent for it as you understand it? Your Honor, it, we believe, refers to any operation that is any of the enumerated operations or any other operation such that the effect of the Chapter Note is to say that if an operation is performed on a fiberboard article that gives it the character of another heading, the article is classifiable in the other heading and not in 4411. Why wouldn't a grammatical reading of Chapter Note 4 suggest that it actually refers to the phrase may be worked? Try reading it that way. You see, Chapter Note 4 seems to say product of heading 4410, et cetera, may be worked to form the shapes provided along any of its edges, et cetera, form the shapes other than square, rectangular, or any other operation provided it does not give them the character. It, the working, does not give them the character. Why doesn't that make better construction sense than trying to tag it to either any other operation or form to shapes or those other phrases? Your Honor, that construction would leave out the clause submitted to any other operation and we would read worked to form those shapes that are enumerated as well as submitted to any other operation to be the things that the pronoun it refers to. There wouldn't be any particular reason for the it to refer to the verb worked and not to the verb submitted. Well, if it refers to may be worked, it would incorporate all the other language that follows, wouldn't it? If it were read to incorporate all of the other language that follows. Well, it has to be because how is it worked? How is the product worked? The product is worked by changing its shape or submitting it to any other operation, presumably physical operation on the product, right? That's right, Your Honor, and that construction would be consistent with Faust's position. It would also be consistent with the obvious function of the chapter note, which is to distinguish certain raw materials and intermediate products which are not described in other headings from those that are. If we agree with the government's construction of note four, do you have an alternate theory upon which we could rule in your favor? Yes, Your Honor. If the government's construction of chapter note four were correct, there are two theories in which we would prevail. The first is that there is an unenumerated operation, namely lamination, which does give this flooring the character of heading 4418. We described that in our brief, that it couldn't be used for the finishing of a building if it hadn't been laminated. That's clearly not an operation listed in chapter note four, and so under their construction, the exclusive effect of chapter note four would still apply. The other theory, Your Honor, would be that even in the event that that were not true, the articles would be prima facie classifiable under both 4411 and 4418, and the court should classify the products in 4418 under the rule of relative specificity, under GRI 3A. What are we to make of EN 44.11, which the government cites in its brief? And, Your Honor, in what particular part of 44.11? Well, it seems to be, it's similar to note four, but it talks about coded or covered or submitted to any other operation. I mean, its reading seems a little more consistent with the one that you'd like us to give to note four, seems to me. Well, Your Honor, we think that EN 44.11 supports us, generally speaking, in two ways. One is by replacing the word it with the term these operations, which in our view refers to all the operations that preceded. Another reason that it supports our reading is that there are operations enumerated in explanatory note 44.11, which are not enumerated in the chapter note, and under the government's reading, if everything that's not enumerated is within the scope of the proviso, we then have additional things enumerated in explanatory note 44.11, which are not within the scope of the proviso, which we believe undermines the government reading of chapter note four. Another reason that our reading of chapter note four is correct, Your Honor, is that in addition to serving the obvious purpose of providing a line of demarcation between articles that are classifiable in other headings on the one hand or in or upgraded materials on the other, and we note in the brief that the government's theory would be an irrational application of that rule in which you would be in the other heading of certain operations applied but not when other operations applied, and there's no particular reason to believe that the drafters would have thought that some operations that equally advance a product to the finished article's heading should have a different result than other operations. But also when we read chapter note four in conjunction with chapter note three, which specifies that articles classifiable in heading 44.11 should be there whether they are made of wood or one of the non-wood substitutes such as fiber board, that result would obtain every time under our reading of chapter note four and only some of the time under the government's reading. Under the government's reading, you would only classify wood and non-wood products the non-wood product got to 44.18 as a result of an operation not enumerated in chapter note four. If it took on the character of heading 44.18 as a result of an operation that was enumerated in chapter note four under the government's reading, that article would stay in 44.11 and you would have an anomalous result such as you do actually in the context of this particular product, laminate flooring, the government is saying tongue and groove flooring should be under 44.11 whereas a finished solid wood tongue and groove flooring, the government classifies under 44.18. We respectfully submit that that result is completely inconsistent with the language of chapter note three. So 44.18 refers to parquet panels. Your view is not simply that if you resemble a parquet floor tile, you're in 44.18. No, that's an exemplar that's listed in the text of 44.18 but the language of 44.18, contrary to what the government is arguing, simply uses the word including to list several exemplars. It in no way limits 44.18 to the particular items listed as exemplars. And we would respectfully submit on the definition of 44.18, it's well supported by the dictionary definitions and by the explanatory note 44.18. The government really doesn't come up with a coherent contrary definition of 44.18. They do argue that it's limited to the exemplars in the heading but there's absolutely no support in the text of the heading for that. They also say it's limited to articles that are not classifiable elsewhere and there's absolutely no support in the heading text for that proposition either. Mr. Chalkley, you're into your rebuttal. Why don't we hear from the government now. Thank you, Your Honor. Ms. Rubin. Good morning. May it please the court. I'm actually going to start out by agreeing with something that Mr. Jarko said and that is that note 4 is the central issue. The interpretation of note 4 is actually the central issue here. Of course, we believe our interpretation is correct but even if you believe that note 4 is either ambiguous or that appellant's interpretation has some merit, you shouldn't apply their interpretation because ours is the only one that doesn't wipe whole tariff provisions out of the statute. Faust concedes that applying note 4 in the way they suggest would in fact wipe provisions out of the statute but they don't see a problem with that because the provisions that would be wiped out are subheadings. Now this is a problem because you really should interpret the statute so as not to nullify any of the language whether in headings or subheadings. Chapter 44 as well as other provisions of the tariff statute are replete with specific provisions covering goods that fall within the dictionary definition of joinery and are used in buildings. The manner in which these provisions of Chapter 44 as well as other chapters have been laid out evinces an intent by the drafters to include within 4418 only such joinery items as are not expressly provided for such as assembled parquet panels and those that are not covered by other tariff provisions. While Mr. Jarko indicates that there's no support that 4418 was intended to be limited that way in the text of the heading, in the context there is a lot of support for that. Faust argues in its brief that our analysis improperly uses the terms of subheadings to construe the competing headings. That's not right. We refer to subheadings simply to show that there are tariff provisions that would be Let's say we accept your grammatical interpretation of Note 4. I would appreciate that. Why is lamination with paper included in the EN 44.11 and not in Note 4? It's actually included in additional US Note 1C also. So it's included in a legal note. An overlay with paper or plastic is specifically provided for for products of heading 44.11. So your interpretation of Note 4, if a fiberboard article, is that a fiberboard article retains its classification as fiberboard even if it's subjected to one of the listed operations? Yes. It's still an article of fiberboard, but it's provided for in 44.11. If I understood your question correctly. If it undergoes one of those specific operations or another operation and that operation does not give it the character of an article of another heading, then yes, it remains in 44.11. And that really has to be the way it is because, especially in Chapter 44, you do have provisions or headings that encompass materials. But you also have those same provisions encompassing articles made of those materials. Now some of those articles would fall into the very broad category of joinery. For example, in 44.09, you have specific subheadings for flooring, for solid wood flooring that has undergone certain operations. But as Mr. Jarka pointed out, Customs has in fact classified some solid wood flooring in 44.18. And that's only the flooring that's not subjected to the type of operation that's specifically provided for in 44.09. And the rulings that they cite in their brief have to do with wood flooring that has undergone polyurethane, which is not one of the surface covering operations provided for for products of 44.09. So it's not true. And Mr. Jarka misspoke a little bit, I believe, when he said that we seem to always put tongue and groove solid wood flooring in 44.18. That depends upon the operations which the flooring has undergone in order to create that product. Ms. Rubin, only lawyers could enjoy this discussion. But fortunately, we're all lawyers. And I get to do it again in the next case. Yes, I know. We're all lawyers trying to understand it. Let me step back just a little bit with you. Sure. The product that they're making is, I assume, must be something that Congress did not have in mind at the time they wrote this statute. Because as I look at it and listen to your arguments, it's clear that neither of you can say, bingo, that's exactly right. It's an interpretive process that we have to go through. Put it another way, I don't find anything in 44.11, 44.18, or any of these other provisions that zeroes right in on his particular product. Now, that is to say, other, other, other seems to me to be a somewhat ambiguous category. Help me understand one thing about this. Maybe it's irrelevant, but maybe it's not because I think it underlies the argument. As I read 44.11, almost everything in 44.11 that's called particle board or fiber board, I should say, fiber board of wood, et cetera, et cetera, is all free under the import with the exception of other, other, other, which happens to turn out to be 6%. 44.18, parquet panels turns out also to be free. Ultimately, you all are fighting over what the tariff duty is. Isn't that right? That's my job. That's your job. Well, no. Actually, that's not my job. I'm glad you're representing the treasury. They need everything they can get. No. I know I'm being recorded, so I have to revise my response. No, no. I'm not holding you to that. Like you, our job is to reach the correct result in classifying merchandise. Okay. Certainly, Faust wouldn't be here if the duty rates for 44.11 and the duty rates for 44.18 were the same. Nor would you. Nor would I because we are defendant and I have to defend my client. Okay. Getting back, you're right. There is no provision that specifically covers laminated boards of this type of fiber board. 44.11.29 actually encompasses laminated boards for a different density of fiber board. Right. So 44.11 does cover- This is a poorly drafted piece of document for deciding his case. Wrong. I respectfully disagree. I'm glad you added that. Go ahead. Because the fact that there was a laminated boards provision put into the HTSUS for a different density certainly does not indicate that this density of fiber board has no home in 44.11. The other provision clearly encompasses other fiber board of that density. And it certainly covers processed fiber board because it specifically allows for specific processes in note four. Yes, but on the other hand, there's nothing in 44.11 that specifically deals with the density of product that he produces which meets the other descriptive factors, which kicks us over to 44.18. Now, I would not have thought of his product as being part of builder's joinery and carpentry of wood, except for all of this chapter note and explanatory note stuff that kicks it around and says, but wait a minute, if it's really been manufactured to do something else, you got to move somewhere else. So it seems to me you're caught on a bit of a dilemma here because you can't quite fit it into 44.11 unless we go other, other, other. Whereas the builder's joinery doesn't really fit so well either, but maybe it fits a little better. It doesn't fit better, and the Bowen decision, if I may, placed a very similar product into the materials, or what we're referring to as the materials provision 44, I believe in that case it was 44.12, which I don't have copied here. Similar provision, 44.18 had been in the running. This court recognized that originally 44.18 was an issue and found nonetheless that that product had not undergone any processing that would take it out of the, in that case, the plywood provision. So this product is very much covered by the language of 44.11. It's fiberboard. It's of the right density. It is bonded with resins. It is surface covered as allowed by additional U.S. Note 1C. It has not undergone any operation, including lamination, which is provided for in additional U.S. Note 1C, that would remove it from 44.11. And in order to put it into 44.18, you would actually have to determine that they're right in interpreting the word it, and they're not. It's grammatically incorrect. It's just inappropriate in context. In trying to figure out what Congress is about, and that's ultimately what we need to get to, isn't it? That's correct. Help me understand, cycling back to the tariff schedule as such, help me understand this. Why would all those other fiberboard products be free but other, other, other would be 6%? What is the underlying policy that Congress is trying to reach by working the schedule that way? Well, now you get a preview of the next case. But building boards were provided for at 6% under the TSUS, the predecessor statute. And this type of product would have most likely been classified as a building board under the TSUS. And in fact, it was 44.11.29 was carried over pretty much intact from the building board's provision of the TSUS. I don't know why it wasn't, I have no idea why it wasn't carried over specifically with that language into 44.11.19, but it doesn't really need to be since there is an other provision that would encompass anything that would have been classifiable at 6% under the building board's provision back under the TSUS. Oh, I have some time remaining. Assuming, perhaps, that you agree with the Court of International Trade and you believe that a GRI 3A relative specificity analysis is in order here. Oh, before I even get to that, I just wanted to note that Judge Poe put together a definition of builder's joint and joinery, which is not a bad way of putting it together, putting builder's and joinery together, since it's not a U.S. term and it only appears in the U.S. I'm sorry, it's not a U.S. term, but he had to find it anyway. But he included parts of the dictionary definitions he looked at. For example, the dictionary definitions indicated that joinery can be furniture. Furniture is specifically provided for in Chapter 94. He didn't put that into his final definition, but it's joinery. So there are provisions in other chapters that would also be nullified if the real scope of joinery was all shoved into Heading 4418. Note 3A, as the Court of International Trade found, the fiberboard provision is much narrower than Heading 4418, which encompasses not just builder's joinery but also carpentry of wood. It also presumably includes, if you get to 3A, structural goods as well as non-structural goods because stairs is included as an example in the explanatory notes, and stairs are structural products. Joinery is a very broad category. It doesn't describe a particular product. And as Mr. Jarko indicated and as they state in their brief, Note 3 broadens that category even further by allowing six different types of wood products into that provision. So fiberboard is fiberboard. It's a single product, and products will remain in 4411 as long as they haven't undergone processing beyond what's specifically allowed, either by the terms of the heading or by the legal notes to that heading. When you give heed to all the statutory language and the relevant legal notes, you should find that products such as falces flooring were never meant to be encompassed by the claimed heading by 4418. That's really a sense of a residual provision for products that don't fall in earlier provisions or that are not specifically named like parquet panels. So you should find that only a GRI-1 analysis is required. If you disagree, however, you should find that, as did the CIT, that we prevail under a GRI-3A analysis. Thank you. Thank you, Ms. Rubin. We'll see you in a minute. Mr. Jarko? Thank you, Your Honor. You have four minutes. Well, we'll give you five minutes. Thank you. I'd like to start, if I may, with the government's analysis that starts with subheadings in order to read them into the meaning of headings. The court's analysis in Orlando Food and other cases which have strictly set up an analytical framework to analyze the language of headings first before going on to subheadings is very significant here, and it's not a matter of simply asking the court to put its blinders on. You can actually reach different results depending on your mode of analysis. In this case, as we explained, under the chapter notes and the headings, you would end up in 4418. If you then went back to some of these subheadings that the government talks about, what then would they mean? What they would cover would be products that are not within the scope of heading 4418. An example would be these fiberboard subheadings that talk about surface covering or lamination. Lamination is a process of sticking two things together. Surface covering is a process of putting something on top of another. Not all surface coverings or laminations render a product usable for the interior finish of a building as it would have to be to be classifiable under heading 4418. For each of the examples that the government would use through its subheadings to try to undermine Faust's analysis, in our brief, we always come up with an answer to those examples. That is, whatever they describe, they describe things that are not within the scope of heading 4418. Moving on to the relative specificity analysis, which is discussed thoroughly in the briefs, what the government continues to ignore in using phrases like narrower or broader to describe these two headings is the test from Orlando Food that the court has established and is well-established here, which is that the heading that is harder to satisfy is the one when the court is breaking the tie between two headings. It's the one that applies. The government really has never responded to our two major arguments on that point, the first being that it is mandatory under 4418 to have processing of a product, whereas under 4411 it's only permissive, not mandatory. You could have processed products, you could have unprocessed products under 4411, not so under 4418. Under a direct analogy to the Orlando Food case itself, in which the court held that a processed tomato product, that that was a more specific heading than an unprocessed tomato product, the same rationale would apply here. In addition, 4418 is a heading which is limited by use. It must be used by builders in the construction of a building, whereas the fiberboard heading is not limited by use. That is another means of, it could be used in the construction of a building, it could be in automobile dashboards, it could be in furniture and a lot of other things under the government's construction of Chapter Note 4. And so we would respectfully submit that because of the heading 4418 is narrowed by use, that is another reason that it is harder to satisfy and therefore more specific under a relative specificity analysis. Thank you. Thank you, Your Honor. Thank you. The final case in which we'll hear oral argument this morning is number two.